# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1921

_____

United States of America,    *
                             *
            Appellee,        *
                             *    Appeal from the United States
    v.                       *    District Court for the Eastern
                             *    District of Missouri.
Carrie Ault,                 *
                             *
            Appellant.       *

_____

Submitted: December 16, 2009
    Filed: March 25, 2010

_____

Before LOKEN, Chief Judge, ARNOLD and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Carrie Ault pled guilty to one count of conspiracy to possess, and two counts of possession of, pseudoephedrine knowing that it would be used to manufacture methamphetamine. She received one criminal history point for a prior drug paraphernalia conviction. After a two-level reduction for acceptance of responsibility, she was sentenced to 124 months imprisonment. Ault appeals, arguing that her paraphernalia conviction is not a "prior sentence" for the purpose of the guidelines, and that the reduction for acceptance of responsibility should be three levels. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

A.

On February 27, 2008, a St. Charles County sheriff stopped Ault while driving. A search of her purse revealed four syringes with meth residue. Ault pled guilty in state court to unlawful use of drug paraphernalia. During the same time period, Ault, as part of the conspiracy, purchased pseudoephedrine (a drug used to manufacture meth) and exchanged it for meth. She bought pseudoephedrine for the conspiracy between January 13, 2007, and April 27, 2008, in a total amount of about 293 grams.

Ault objected to counting the paraphernalia conviction as a criminal history point, arguing it is "relevant conduct" because her use of meth paraphernalia was related to her conduct in the conspiracy. The district court held that it was a separate and distinct offense, and allowed it to be counted as a point. This court reviews the district court's findings of fact for clear error, and its interpretation and application of the guidelines de novo. *United States v. Phelps*, 536 F.3d 862, 868 (8th Cir. 2008).

Under U.S.S.G. § 4A1.1, a defendant receives 0-3 criminal history points for each prior sentence. "The term 'prior sentence' means any sentence previously imposed . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). If the conduct is part of the instant offense, it is relevant conduct and is considered in the calculation of the defendant's offense level, not the criminal history category. *See* U.S.S.G. § 1B1.3(a); *United States v. Chibukhchyan*, 491 F.3d 722, 725 (8th Cir.2007). Relevant conduct includes "all acts . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). In contrast, if the prior criminal conduct is severable and distinct, it is not relevant conduct. *See Chibukhchyan*, 491 F.3d at 725. "Factors useful in determining whether the two offenses are severable and distinct are temporal and

geographical proximity, common victims, common scheme, charge in the indictment, and whether the prior conviction is used to prove the instant offense." ***United States v. Stone***, 325 F.3d 1030, 1032 (8th Cir.2003).

Ault argues that the paraphernalia conviction is relevant conduct based on the *Stone* factors. First, she notes that the paraphernalia charge and the pseudoephedrine purchases were temporally proximate, and it is true that the paraphernalia charge occurred while Ault was participating in the conspiracy. Second, she contends that both offenses occurred either in St. Louis or St. Charles counties. However, the paraphernalia charge occurred in St. Charles county, while most of the pseudoephedrine purchases occurred in (adjoining) St. Louis county. Third, Ault argues that the victim of both offenses is "society at large." However, the victim of Ault's paraphernalia offense is Ault herself, while the victims of the conspiracy to manufacture meth are later users of meth. Fourth, her use of meth paraphernalia was not part of the scheme to purchase pseudoephedrine to be made into meth. *Compare* ***United States v. Alan Lee Ault***, 446 F.3d 821 (8th Cir. 2006) (holding no clear error for the district court to find that the defendant's pseudoephedrine-meth exchange was relevant conduct to the offense of attempting to manufacture meth, when the attempted manufacture and the pseudoephedrine-meth exchange were part of a scheme to acquire meth for personal use). Fifth, Ault's paraphernalia use was not charged in the indictment as an act in furtherance of the conspiracy. Finally, Ault contends that the paraphernalia conviction could have been used to establish her knowledge that pseudoephedrine is a component of meth. However, the prior conviction was, in fact, not used to prove the instant offense. Based on the *Stone* factors, the paraphernalia charge appears severable and distinct from the conspiracy to manufacture meth.

Ault relies on *United States v. Kenyon*, 7 F.3d 783, 787 (8th Cir. 1993). In *Kenyon*, this court held that a prior state conviction for possession of cocaine was "relevant conduct" to a charge of conspiracy to distribute cocaine, because the two

charges covered the same conduct. *Id.* Unlike *Kenyon*, Ault's use of drug paraphernalia did not comprise part of the conduct in the federal offense.

More relevant is *United States v. Davidson*, 195 F.3d 402, 409 (8th Cir. 1999). In *Davidson*, the defendant argued that her prior convictions for meth possession were relevant conduct to her conviction for conspiracy to distribute meth. This court held that "simple possession of an amount of methamphetamine consistent with personal use is not in itself preparation or furtherance of a conspiracy to distribute methamphetamine." *Id.* Similarly, Ault's use of paraphernalia is not preparation or furtherance of a conspiracy to manufacture meth, particularly in light of the fact that Ault's role in the conspiracy was to buy a precursor chemical. The district court did not err in assessing Ault a criminal history point for her paraphernalia conviction.

## B.

Ault contends that the district court erred in giving her a two-level, rather than a three-level, reduction for acceptance of responsibility. Had she received a three-level reduction, the sentencing range would be 151-188 months, rather than the 168-210 months stated by the district court. Ault did not raise this argument in the district court, so this court reviews for plain error. *See **United States v. Pirani***, 406 F.3d 543, 548 (8th Cir. 2005). To prevail, the appellant must show that there is "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three of those conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." ***Johnson v. United States***, 520 U.S. 461, 462 (1997). *See also **United States v. Rodriguez-Ceballos***, 407 F.3d 937, 940 (8th Cir. 2005).

It is undisputed that Ault was entitled to a three-level reduction for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a), (b). Thus there is error that is plain.

The question is whether this error affected her substantial rights. In order for an error to affect substantial rights, it must be prejudicial. ***United States v. Rush-Richardson***, 574 F.3d 906, 911 (8th Cir. 2009). An error is prejudicial if the defendant shows a reasonable probability that, but for the error, the outcome would have been different. ***Id.***

Ault notes that this court, reviewing for plain error, has previously held that when a sentencing court miscalculates the guideline range, there is a presumption of prejudice that requires remand unless the record shows that the district court would have imposed the same sentence absent the error. ***United States v. Warren***, 361 F.3d 1055 (8th Cir. 2004). *See also* ***United States v. Weaver***, 161 F.3d 528, 530 (8th Cir. 1998). In both cases, the district court miscalculated the guideline range, but the resulting sentence was within the correct range. ***Warren***, 361 F.3d at 1059; ***Weaver***, 161 F.3d at 530. In both *Warren* and *Weaver*, the district court originally sentenced at the bottom of the miscalculated guideline range. ***Warren***, 361 F.3d at 1059; ***Weaver***, 161 F.3d at 530. In both cases, although the district court could re-impose the same sentence, the error in calculating the guideline range warranted remand for resentencing. ***Warren***, 361 F.3d at 1059; ***Weaver***, 161 F.3d at 530. Both the *Warren* and *Weaver* cases were decided under a mandatory guidelines regime. The *Booker* and *Gall* decisions of the Supreme Court have made the guidelines advisory. *See* ***United States v. Booker***, 543 U.S. 220, 259 (2005); ***Gall v. United States***, 552 U.S. 38, 46 (2007). In this case there is a *Gall* procedural error, miscalculation of the guideline range. When a *Gall* procedural error is reviewed for plain error, the burden is on the defendant to demonstrate a reasonable probability that, but for the error, the outcome would have been different. ***United States v. Bain***, 586 F.3d 634, 639-40 (8th Cir. 2009)

The district court gave Ault a two-level reduction for acceptance of responsibility, making the total offense level 34, resulting in a guideline range of 168-

210 months. Based on a three-level reduction, and total offense level of 33, the correct guideline range is 151-188 months.

Ault was sentenced to 124 months. According to the record, this sentence was based largely on the fact that Ault supplied the second-most pseudoephedrine of anyone in the conspiracy. The person who supplied the most was sentenced to 151 months; the person who supplied the third-most was sentenced to 100 months. The district court noted Ault's particularly harsh childhood, but also that the conspiracy ultimately put over 2.2 pounds of methamphetamine on the streets of St. Louis. The sentence imposed was tailored to the unique circumstances of this case, and avoided disparate treatment with co-conspirators. Unlike *Warren* and *Weaver,* where the defendant's sentence was exactly at the bottom of the improperly-calculated mandatory guideline range, the sentence imposed here was significantly below the bottom of the miscalculated advisory range, and would also be significantly below the bottom of the properly-calculated advisory range. Thus, Ault has not met her burden of showing a reasonable probability of a different outcome. The district court's procedural error was not prejudicial.

II.

The judgment of the district court is affirmed.

_____